IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CHILOGISTICS LLC, a Florida limited liability
company, FL 5019 LLC, a Florida limited
liability company, and LUIS MAIZ, and individual

Plaintiffs,

Case No.: 0:22CV61552

vs.

REVO TEAM LLC, a Florida limited liability
company, ROYAL ENTERPRISES, INC., a
New Jersey corporation, and WILLIAM SMITH,
an individual.

Defendants.
_____/

## VERIFIED COMPLAINT

Plaintiffs, CHILOGISTICS LLC ("Chilogistics"), FL 5019 LLC ("FL 5019") and Luis Maiz ("Mr. Maiz") (together the "Plaintiffs"), by and through the undersigned Counsel, sues Defendant, REVO TEAM LLC ("Revo"), ROYAL ENTERPRISES, INC. ("Royal Enterprises"), and WILLIAM SMITH ("Smith") (Revo, Royal Enterprises, and Smith, together the "Defendants") and as grounds thereof alleges as follows:

### JURISDICTION, PARTIES AND VENUE

1. This is an action for damages in excess of $30,000.00, exclusive of attorneys' fees and costs.

2. Plaintiff, CHILOGISTICS LLC is a Florida limited liability company with principal place of business in Fort Lauderdale, Florida.

3. Plaintiff, FL 5019 LLC is a Florida limited liability company with principal place of business in Fort Lauderdale, Florida.

4.  Plaintiff, Luis Maiz, is an individual over the age of 18, sui iuris, who resides in Fort Lauderdale, Florida, and is sui juris.

5.  Defendant, REVO TEAM LLC is a Florida limited liability company with principal place of business in Miami-Dade, Florida.

6.  Defendant, ROYAL ENTERPRISES, INC. is a New Jersey corporation that has conducted business in Florida, and has committed a tortious act in Florida.

7.  Defendant, WILLIAM SMITH, is an individual over the age of 18, sui iuris, who resides in Florida and/or conducts business in Florida.

8.  Venue is proper in Miami-Dade County, under Section § 685.101 Florida Statutes.

9.  All conditions precedent to the bringing and maintaining of this action have been satisfied, performed, or waived.

## GENERAL ALLEGATIONS

10. As of 2021, Plaintiffs owned, operated, and had an interest in a business known as Hammad Wholesale (the "Business"), located in Fort Lauderdale, Florida.

11. Plaintiffs (also the "Seller") and Defendants (also the "Buyer") negotiated the sale of the Business' assets.

12. Buyer offered to pay $150,000.00 for the Business' good will and customer lists; and $100,000.00 for the Business' fixed assets, i.e., its trucks, van and cars, forklifts, pallet jack, and furniture.

13. Additionally, Buyer offered to buy all usable Business' inventory at cost (the "Inventory").

14. As of June 11, 2021, the Buyer was aware that the Inventory had a retail value of at least $800,000.00.

15. The Buyer submitted a Letter of Intent, indicating a purchase price of $250,000.00 *plus* usable inventory at cost. At the execution of said Letter of Intent, the Buyer would complete the due diligence expeditiously, and the parties were to execute a purchase agreement by July 29, 2021. A true and correct copy of the Letter of Intent is attached hereto as **Exhibit "1"**.

16. Accordingly in early July 2021, Mr. Maiz, an elder, acting on behalf of FL 5019 and Chilogistics executed the Letter of Intent and agreed to sell the Business's assets (i.e., good will, customer lists, its trucks, van and cars, forklifts, pallet jack, and furniture) in exchange for $250,000.00 (the "Purchase Price"), in addition to the Business' Inventory which the Buyer would pay at cost.

17. Thereafter, Roger Fuentes, on behalf of the Buyer, and Mr. Maiz, on behalf of the Seller, further discussed the terms of a purchase agreement, including the $250,000.00 Purchase Price plus the value of the Business' Inventory, which the Buyer would pay at cost.

18. Accordingly, on or about July 7, 2021, Roger Fuentes sent Mr. Maiz the agreement (the "Asset Purchase Agreement") via electronic mail. Immediately thereafter, Mr. Maiz -pressured by the Buyer to move forward with the closing of the business transaction- executed it. A true and correct copy of the Asset Purchase Agreement received by Mr. Maiz is attached hereto as **Exhibit "2"**.

19. Section 1 of the Asset Purchase Agreement, confirmed the agreed Purchase Price of $250,000.00 payable as follows: first payment in the amount of $125,000.00 at closing, and the balance -to be held back- payable within twelve (12) months following the closing.

20. On or around August 13, 2021, Seller and Buyer agreed not to "holdback" the balance of $125,000.00 due within twelve (12) months following the closing, and Buyer promised to provide a personal guarantee from the company's owner and ultimate beneficiary.

21. The closing was initially agreed to occur on August 23, 2021, and a final inventory was to take place prior to the closing date.

22. In or around August 2021, in performance of the Asset Purchase Agreement the Seller delivered to Buyer the Business' assets, including the Inventory.

23. As of September 1, 2021, the Buyer had made a partial payment of the Purchase Price in the amount of $65,000.00. The closing was later re-scheduled for Monday, September 13, 2021.

24. The Inventory was accounted for and recorded in the Business' computers. The total value of the Inventory was assessed at $1,007,000.00.

25. A dispute between the parties arose in connection with certain inventory Buyer wanted to return and some other goods that were not listed but Buyer was making use of. Also, dispute in connection with costs that the Seller continued to assume awaiting on the closing of the transaction, including vehicle insurance, merchandise insurance, workers' compensation, moving costs, overtime, and other expenses.

26. On October 25, 2021, Buyer made an offer to buy the Inventory in exchange for the irrisory amount of $150,000.00, which offer was rejected by the Seller. Buyer took possession of the Inventory in September, when the cost value of the goods was in excess of $1,000,000.00. In good faith, and awaiting the closing date, Seller allowed Buyer to take possession and control over the Inventory after the due diligence period.

27. After the Buyer was operating the business, when it was not plausible or commercially reasonable to revert the transaction, Buyer attempted to convert the Inventory. Buyer threatened Mr. Maiz to accept the $150,000.00 as the value of the Inventory, or to return the goods (some perishable) to this elder individual who is no longer in the business of wholesale/distribution of goods.

28.     On December 7, 2021, the Buyer claimed for the first time that the Inventory *was* included in the Purchase Price and that Mr. Maiz misunderstood the terms of the deal. Buyer further stated that in an effort to accommodate the Seller it was willing to add $150,000.00 to the Purchase Price. Once again, Buyer threatened to unwind the transaction and to return the Inventory, the trucks and the Plaintiff's intellectual property, giving Mr. Maiz no other option than to give up the Inventory that the Buyer knew was worth over $1,000.000.00.

29.     Defendant at all times and with scienter intended to take advantage of Mr. Maiz, who was a vulnerable elder.

30.     Defendant's reprehensible behavior has emotionally disturbed Mr. Maiz.

31.     At all times, the parties agreed that the Purchase Price did not include the Inventory's value.

32.     More than ten (10) months have elapsed since the Defendant promised to close and took possession of the Business, the contracts, the Inventory, its customer lists, employees, and computers with all the Business's information.

33.     Deceitfully, Defendant took possession and control over Plaintiff's goods knowing their value to be at $1,007.000.00 and then offered to pay only fifteen percent (15%) of said value knowing, at that point, that it was not commercially reasonable to revert the transaction.

## COUNT I – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
**(Against all Defendants)**

34.     Paragraphs 1 to 33 are realleged as if fully set forth herein.

35.     Defendants, acting as the Buyer, offered to pay $150,000.00 for the Business' good will and customer lists; and $100,000.00 for the Business' fixed assets, i.e., its trucks, van and cars, forklifts, pallet jack, and furniture.

36.     Additionally, Buyer offered to buy all usable Business' Inventory at cost.

37. As of June 11, 2021, the Buyer was aware that the Inventory had a retail value of at least $800,000.00.

38. The Buyer submitted a Letter of Intent, indicating a purchase price of $250,000.00 *plus* usable inventory at cost. *See* Ex. 1.

39. Roger Fuentes, on behalf of the Buyer, and Mr. Maiz, on behalf of the Seller, further discussed the terms of a purchase agreement, including the $250,000.00 Purchase Price plus the value of the Business' Inventory, which the Buyer would pay at cost.

40. In early July 2021, Plaintiffs 5019 LLC and Chilogistics LLC, and Defendant Revo Team LLC entered into an Asset Purchase Agreement. *See* Ex. 2.

41. In or around August 2021, in good faith and awaiting the closing date, Seller performed and delivered the assets and the Inventory.

42. The Inventory was accounted for and recorded in the Business' computers. The total value of the Inventory was $1,007,000.00.

43. After the Buyer was operating the business, when it was not plausible or commercially reasonable to revert the transaction, Buyer threatened Mr. Maiz to accept $150,000.00 as the value of the Inventory, or to return the goods (some perishable) to this elder individual who is no longer in the business of wholesale/distribution of goods.

44. On December 7, 2021, the Buyer claimed for the first time that the Inventory *was* included in the Purchase Price and that Mr. Maiz misunderstood the terms of the deal. Buyer further stated that in an effort to accommodate the Seller it was willing to add $150,000.00 to the Purchase Price. Once again, Buyer threatened to unwind the transaction and to return the Inventory, the trucks and the Plaintiff's intellectual property, giving Mr. Maiz no other option than to give up the Inventory that the Buyer knew was worth over $1,000.000.00.

45. More than ten (10) months have elapsed since the Defendant promised to close and took possession of the Business, the contracts, the Inventory, its customer lists, employees, and computers with all the Business's information.

46. Deceitfully, Defendant took possession and control over the assets and the Inventory, both valued at $1,250,000.00 and have paid no more than $100,000.00.

47. Defendants have acted in an arbitrary and unreasonably manner frustrating Plaintiffs' reasonable expectations and the benefit of the bargain.

48. Defendants have failed to act in a way that is faithful to the terms of the agreement and as a result, Plaintiffs have suffered a damage.

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants in favor of Plaintiffs, for all damages resulting from Defendants' unlawful conduct, Plaintiffs specifically reserve the right to seek punitive damages, prejudgment interests, costs, and all such other relief the Court deems just and proper.

### COUNT II – FRAUD IN THE INDUCEMENT
**(Against all Defendants)**

49. Paragraphs 1 to 33 are realleged as if fully set forth herein.

50. In early July 2021, Plaintiffs 5019 LLC and Chilogistics LLC, and Defendant Revo Team LLC entered into an Asset Purchase Agreement. *See* Ex. 2.

51. Prior to entering into the Asset Purchase Agreement, Defendants falsely represented to Plaintiffs that they would purchase the Business in exchange for $250,000.00 *plus* usable inventory at cost.

52. In June 2021, Royal Enterprises delivered a Letter of Intent specifically indicating a Purchase Price of $250,000.00, in addition to the Business' Inventory which the Buyer would pay at cost. *See* Ex. 1.

53. On or around June 11, 2021, William Smith offered to pay the retail value of the approximate $800,000.00 of Inventory.

54. Relying on said terms and representations, Mr. Maiz, on behalf of the Plaintiffs, further discussed via phone the terms of the purchase agreement with Roger Fuentes, agent of the Defendants.

55. In or around August 2021, Defendants took possession and control over the Business' assets, including the Inventory.

56. Defendants waited and when the transaction was not feasibly reversible, on December 7, 2021, Defendants claimed *for the first time* that the value of the Inventory was included in the Purchase Price and that Mr. Maiz misunderstood the terms of the deal.

57. Defendants were fully aware that Mr. Maiz, an elder seeking retirement, was selling the Business with the intent of closing down the wholesale/distribution operations.

58. Defendants tricked Mr. Maiz into signing the Asset Purchase Agreement to Plaintiffs' disadvantage.

59. At all times prior to the execution of the Asset Purchase Agreement Defendants assured they would purchase the Business in exchange for $250,000.00 *plus* usable inventory at cost, and acknowledged the value of the Inventory to be at least $800,000.00. Defendants issued a Letter of Intent, verbally assured those were the terms, and made Mr. Maiz accept those terms.

60. Defendants abused their position and months after Plaintiffs delivered the assets, including the Inventory, Defendants attempted to pressure Mr. Maiz to sell the Inventory at a fifteen percent (15%) of its value in lieu of unwinding the transaction.

61. Defendants presented the transaction as a fair one with the intent to induce Plaintiffs' reliance.

62. As a result, Plaintiffs' have been injured.

**WHEREFORE**, Plaintiffs demands judgment against Defendants for damages, specifically reserve the right to seek punitive damages, prejudgment interests, costs, and all such other relief the Court deems just and proper.

## COUNT III – CONVERSION
### (Against Revo and Smith)

63. Paragraphs 1 to 33 are realleged as if fully set forth herein.

64. Defendants, acting as the Buyer, offered to pay $150,000.00 for the Business' good will and customer lists; and $100,000.00 for the Business' fixed assets, i.e., its trucks, van and cars, forklifts, pallet jack, and furniture.

65. Additionally, Defendants offered to buy all usable Business' Inventory at cost.

66. In or around August 2021, in good faith and awaiting the closing date of the transaction, Seller performed and delivered the Business' assets and the Inventory.

67. The Inventory was accounted for and recorded in the Business' computers. The total value of the Inventory was $1,007,000.00.

68. Deceitfully, Defendants continue to take possession and control over the Plaintiffs' assets and the Inventory, both valued at $1,250,000.00 and refuse to pay for said assets and Inventory.

69. Defendants are unlawfully operating a business with Plaintiffs' assets and Inventory.

70. Revo and Smith, without authority, are using and selling Plaintiffs' property.

71. As a result, Plaintiffs' have been injured.

**WHEREFORE**, Plaintiffs demands judgment against Defendants for damages, specifically reserve the right to seek punitive damages, prejudgment interests, costs, and all such other relief the Court deems just and proper.

## COUNT IV – FRAUDULENT MISREPRESENTATION
### (Against Revo and Smith)

72.  Paragraphs 1 to 33 are realleged as if fully set forth herein.

73.  In early July 2021, Plaintiffs 5019 LLC and Chilogistics LLC, and Defendant Revo Team LLC entered into an Asset Purchase Agreement for the purchase of the Business in exchange for $250,000.00 *plus* usable inventory at cost.

74.  Defendants induced Plaintiffs' performance under the Asset Purchase Agreement intentionally concealing the fact that Defendants did not intend to pay the Purchase Price plus the value of the Inventory.

75.  In or around August 2021, awaiting the closing date, Plaintiffs performed and delivered the Business' assets and all the Inventory, and Revo was in possession and control of said assets and Inventory.

76.  Upon delivery, the Inventory was accounted for and recorded in the Business' computers. The total value of the Inventory was assessed at $1,007,000.00.

77.  At all times prior to the delivery of the assets and Inventory, Defendants were fully aware of the fact that that the value of the Inventory was due in addition to the Purchase Price of $250,000.00, to the extent that on or around June 11, 2021, William Smith offered to pay the retail value of the approximate $800,000.00 of Inventory.

78.  After the Revo was operating the business, when it was not plausible or commercially reasonable to revert the transaction, Defendants pressured Mr. Maiz to accept fifteen percent (15%) of the Inventory's value in lieu of unwinding the transaction.

79.  Buyer threatened Mr. Maiz to accept $150,000.00 as the value of the Inventory, or to return the goods (some perishable) to this elder individual who was no longer in the business of wholesale/distribution of goods.

80. Thereafter, the Defendants maintained that the Inventory *was* included in the Purchase Price.

81. Deceitfully, Defendants misappropriated the Business' assets and the Inventory, both valued at $1,250,000.00.

82. Plaintiffs entered into the business transaction with Defendants under the premise that Defendants were purchasing the Business in exchange for $250,000.00 *plus* usable inventory at cost and accordingly, Plaintiffs performed. Defendants deceitfully waited more than six months to allege for the first time, that the Purchase Price included the Inventory.

83. As a result, Plaintiffs' have been injured.

**WHEREFORE**, Plaintiffs demands judgment against Defendants for damages, specifically reserve the right to seek punitive damages, prejudgment interests, costs, and all such other relief the Court deems just and proper.

### COUNT V – UNJUST ENRICHMENT
### (In the alternative to Counts I to IV)
### (Against all Defendants)

84. Paragraphs 1 to 33 are realleged as if fully set forth herein.

85. Defendants, acting as the Buyer, offered to pay $150,000.00 for the Business' good will and customer lists; and $100,000.00 for the Business' fixed assets, i.e., its trucks, van and cars, forklifts, pallet jack, and furniture.

86. Additionally, Buyer offered to buy all usable Business' Inventory at cost.

87. The Buyer submitted a Letter of Intent, indicating a purchase price of $250,000.00 *plus* usable inventory at cost. *See* Ex. 1.

88. In or around August 2021, in good faith and awaiting the closing date, Seller performed and delivered the assets and the Inventory.

89. The Inventory was accounted for and recorded in the Business' computers. The total value of the Inventory was assessed at $1,007,000.00.

90. After the Buyer was operating the business, when it was not plausible or commercially reasonable to revert the transaction, Buyer attempted to convert the Inventory. Buyer threatened Mr. Maiz to accept the $150,000.00 as the value of the Inventory, or to return the goods (some perishable) to this elder individual who is no longer in the business of wholesale/distribution of goods.

91. On December 7, 2021, the Buyer claimed for the first time that the Inventory *was* included in the Purchase Price and that Mr. Maiz misunderstood the terms of the deal.

92. Deceitfully, Defendant took possession and control over the assets and the Inventory, both valued at $1,250,000.00.

93. Defendants are operating a business with Plaintiffs' assets and Inventory, and have benefited from it.

94. It would be inequitable for the Defendants to retain the benefit of the assets and Inventory, both valued at $1,250,000.00 for which Defendants have made payments in the approximate amount of $102,000.00.

**WHEREFORE**, Plaintiffs respectfully request this Court enters judgment against Defendants in favor of Plaintiffs, for all damages resulting from Defendants' unlawful conduct, as well as any other damages or further relief as this Court considers appropriate.

Dated: August 22, 2022.

> Respectfully submitted,
> BAILEY DUQUETTE, P.C.
> 150 SE 12 Street, Suite 300
> Fort Lauderdale, Florida 33316
> Telephone: 954.495.9212

<u>/s/ German Morales.</u>
German Morales (Fla Bar No. 015525)
Lizet Cardozo (Fla Bar No. 115419)
german@baileyduquette.com
lizet@baileyduquette.com
yanina@baileyduquette.com
*Counsel for Plaintiffs*

## VERIFICATION

I, Luis Maiz, acting in my capacity as authorized representative of Chilogistics, LLC and FL 5019 LLC., hereby certify that I have read the foregoing Complaint, and to the best of my knowledge the facts set forth therein, are true, accurate and complete.

By: _____
Luis Maiz
Authorized Representative